UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20CR243 SNLJ(JMB) |
| | ) | |
| KENYUN ROBINSON, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Currently before the Court is the United States' Motion for Inquiry Into A Potential Conflict of Interest As To Attorney Jermaine Wooten (hereinafter "Motion for Inquiry") (Doc. 21).  On May 20, 2020, an indictment was returned charging Defendants Kenyun Robinson (hereinafter "Kenyun Sr."), Jesse Holmes, Terrance Crawford, and Timothy Brock with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, among other charges.  On May 27, 2020, Kenyun Sr. and co-defendants Terrance Crawford and Timothy Brock surrendered and were scheduled to appear with counsel before the undersigned United States Magistrate Judge for an Initial Appearance, Arraignment, and Detention Hearing.  Shortly before the initial appearance, the United States filed the Motion for Inquiry.  At the initial appearance, the undersigned discussed the Motion

for Inquiry with counsel.  Based on the discussion held in open Court and based on the information contained in the United States' Motion for Inquiry, the undersigned scheduled separate conflict hearings for Kenyun Sr. and Jesse Holmes.

In the Motion for Inquiry, the United States contends that attorney Jermaine Wooten's representation of Kenyun Sr. in this case gives rise to a potential conflict of interest because (1) Mr. Wooten previously represented co-defendant Jesse Holmes in a related state case; (2) Mr. Wooten previously represented Kenyun Sr.'s son, Kenyun Robinson, (hereinafter "Kenyun Jr.") in *United States v. Kenyun Robinson,* 4:19CR427 CDP (terminated 8/12/2019) (hereinafter "Robinson I"); and (3) Mr. Wooten currently represents Kenyun Sr.'s other son, Kaylin Robinson, in *United States v. Kaylin Robinson*, 4:19CR329 RLW (pending) (hereinafter "Robinson II").  The United States filed a substantially identical motion for inquiry in Robinson II and that motion was referred to the undersigned for a joint disposition. As such, the undersigned also scheduled a conflict inquiry hearing of Kaylin Robinson and will enter a substantially identical order in Robinson II.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On January 10, 2019, in Robinson I, Kenyun Jr. was charged in an indictment with possession with intent to distribute fentanyl and possession of a firearm in furtherance of drug trafficking. Mr. Wooten entered his appearance as counsel of record for Kenyun Jr.  Kenyun Jr. entered a guilty plea on April 30, 2019, and on

August 12, 2019, he was sentenced by the Honorable Catherine D. Perry to 90 months in the Bureau of Prisons. Mr. Wooten remained counsel of record for Kenyun Jr. through his sentencing on August 12, 2019.

On January 14, 2019, Curtis Fairley, a nephew of Kenyun Sr., was charged in a criminal complaint issued by the Honorable David D. Noce with possession with intent to distribute a controlled substance (fentanyl/heroin) and possession of a firearm in furtherance of a drug trafficking crime. Jermaine Wooten entered as counsel of record for Fairley on January 15, 2019.  An indictment was subsequently returned in *United States v. Slack, et al.*, Case No. 4:19CR58ERW (hereinafter "Slack") in which Fairley was charged with the substantially same offense charged in the complaint. Fairley entered a guilty plea on June 7, 2019, and, on September 4, 2019, was sentenced by the Honorable E. Richard Webber to a term of 30 months in the Bureau of Prisons.  Mr. Wooten represented Fairley through his sentencing on September 4, 2019.

On August 15, 2019, Defendant Jesse Holmes was arrested by the St. Louis Metropolitan Police Department for drug possession and was subsequently charged in Case No. 1922-CR03501 with two counts of possession with the intent to distribute.  Mr. Wooten entered his appearance on behalf of Mr. Holmes in the state case on March 16, 2020. He remained counsel of record until May 16, 2020, when he withdrew citing a potential conflict of interest. Raphael Morris entered his

appearance for Jesse Holmes in the state case and the state case was eventually dismissed.

In Robinson II, on April 25, 2019, Kaylin Robinson was charged in an indictment with possession with intent to distribute 400 grams or more of fentanyl. Kaylin Robinson was arrested on May 1, 2019, and Mr. Wooten entered his appearance as counsel of record for Kaylin Robinson on May 3, 2019. On January 6, 2020, Kaylin Robinson entered a guilty plea and is currently awaiting sentencing before the Honorable Ronnie L. White.  Mr. Wooten has remained counsel of record for Kaylin Robinson since entering his appearance on May 3, 2019.

On May 7, 2020, Kenyun Sr. was charged together with co-defendants Jesse Holmes, Terrance Crawford, and Timothy Brock in a criminal complaint with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, among other charges. The charged offense included conduct dating back as early as December 2018.  Jermaine Wooten entered his appearance on behalf of Kenyun Sr. on May 16, 2020.  On May 20. 2020, Jesse Holmes was arrested and appeared for an Initial Appearance before the Honorable David D. Noce. His counsel of record was (and continues to be) Raphael Morris.  On May 20, 2020, an indictment was returned against the four defendants named in the Complaint. Defendants Terrance Crawford and Timothy Brock are represented by attorneys Paul Sims and Jerryl Christmas, respectively.

On May 27, 2020, the United States filed its Motion for Inquiry.  On that same date, Attorney Daniel Dailey was granted leave to appear pro hac vice on behalf of Kenyun Sr. At the initial appearance, defense counsel requested, and were granted, time through May 29, 2020, to file a written response to the Motion for Inquiry.  At the request of Kenyun Sr., the undersigned appointed Assistant Federal Public Defender to serve as conflict-free counsel for Kenyun Sr.  Kenyun Sr. and Kaylin Robinson filed written conflict waivers in their respective cases on June 2, 2020, and June 5, 2020, respectively.

On June 3, 2020, the undersigned held a conflict hearing with Kenyun Sr. Kenyun Sr. was represented at the hearing by attorneys Dailey and Wooten. Also present was conflict counsel Assistant Federal Public Defender, Scott Krischke.  On June 10, 2020, the undersigned held separate conflict hearings with Jesse Holmes and Kaylin Robinson.  Mr. Holmes was represented at his conflict hearing by his counsel of record, Raphael Morris, and Kaylin Robinson was represented at his conflict hearing by Jermaine Wooten.

### SUMMARY OF CONFLICT HEARINGS

#### A. *Kenyun Robinson*

On June 3, 2020, the undersigned held a Conflict Inquiry Hearing regarding Mr. Wooten's representation of Kenyun Sr. while he is also representing Kaylin

Robinson and having previously represented Jesse Holmes and Kenyun Jr.[1]  Kenyun Sr. was present via video as were Mr. Wooten and Mr. Dailey. The government was represented by AUSA Jeannette Graviss. Also present was conflict-free standby counsel Scott Krischke, who announced that he conferred with Kenyun Sr. in advance of the hearing and advised him regarding the potential for a conflict in this case.

AUSA Graviss described the circumstances leading her to conclude that a potential conflict of interest exists due to Mr. Wooten's representing Kenyun Sr. while simultaneously representing Kaylin Robinson and having previously represented Kenyun Jr. and Jesse Holmes in separate, but related, drug trafficking cases. AUSA Graviss indicated the United States believes the drug trafficking offenses charged against Kenyun Jr. in Robinson I and against Kaylin Robinson in Robinson II, are part and parcel of the drug conspiracy charged in in this case. AUSA Graviss also indicated her belief that the now-dismissed state charges against Jesse Holmes are also relevant, if not directly related to the conspiracy charged in this case.  AUSA Graviss made it clear that the drug trafficking activities of Kenyun Sr.'s children and other family members would be central to the United States' case at trial and the United States intends to introduce evidence related to the drug

---

[1] At the time of the conflict hearing on June 3rd, the undersigned was not aware of and therefore did not address any potential conflict arising from Mr. Wooten's prior representation of Curtis Fairley in *Slack*.

trafficking activities and seized narcotics from Kenyun Sr.'s children and others.  As such, it is the United States' position that Kenyun Jr., Kaylin Robinson, Jesse Holmes, and Kenyun Sr. (along with the other defendants charged in this case) are co-conspirators. AUSA Graviss indicated the United States was not taking a position at this time as to whether Mr. Wooten should be disqualified or whether there was or was not an actual non-waivable conflict at this time.

Mr. Wooten explained, in substance, that he had did not believe there was any actual conflict of interest and suggested that the positions taken by Kaylin Robinson and Kenyun Jr. in their cases are not inconsistent or otherwise in conflict with Kenyun Sr.'s defense in this case.  Mr. Wooten and Mr. Dailey both represented that they determined there was no conflict and made representations consistent with the written response filed on June 2, 2019 (Doc. 58).   Mr. Wooten advised the undersigned it was his belief that Kenyun Sr. wanted to waive any potential conflict of interest and wanted to continue with Mr. Wooten's representation.  Indeed, on June 5, 2020, Mr. Wooten submitted a written conflict waiver signed by Kenyun Sr.

At the hearing, the undersigned advised Kenyun Sr. of his right to have effective, conflict-free representation. The undersigned provided examples of how Mr. Wooten's representation of Kenyun Sr. might result in a conflict of interest given his ongoing representation of Kaylin Robinson and past representation of Jesse Holmes and Kenyun Jr.  Kenyun Sr. was advised that conflicts are difficult to predict

and that there could be adverse consequences for him if he proceeds despite the potential for a conflict of interest. Kenyun Sr. was also advised that if an actual conflict arose, his attorney may have to withdraw from his representation. Kenyun Sr. was advised that, if he waived his right to conflict-free counsel, he would be precluded from later arguing that his attorney's representation was defective due to a conflict of interest.

After hearing the statements of AUSA Graviss and Mr. Wooten, and after consulting with conflict-free counsel and being advised of his rights and the risks of potential conflicts of interest, Kenyun Sr. unequivocally stated his desire to waive any conflict and continue with Mr. Wooten's representation.  The undersigned accepted Kenyun Sr.'s waiver of the potential for a conflict of interest. Kenyun Sr. subsequently filed a written conflict waiver on June 5, 2020, which substantially tracked the statements made in open court during the conflict hearing.

### B. Jesse Holmes

On June 10, 2020, the undersigned held a Conflict Inquiry Hearing with Jesse Holmes regarding Mr. Wooten's representation of Kenyun Sr. in this case despite having previously represented Jesse Holmes in a separate but related drug trafficking case in the state.  Mr. Morris appeared on behalf of Mr. Holmes.  AUSA Graviss represented the United States. The hearing was conducted in substantially the same manner as the June 3rd conflict hearing with Kenyun Sr.

AUSA Graviss described the circumstances outlined above that lead her to conclude that a potential conflict of interest exists due to Mr. Wooten's current representation of Kenyun Robinson in this case, given his past representation of Jesse Holmes in the state drug trafficking case.  AUSA Graviss explained why she believes the state case is related and relevant to this case, including evidence she expected the United States to present at trial that relates to Holmes's state case. AUSA Graviss noted the United States was not taking a position as to whether there was an actual non-waivable conflict at this time.

Mr. Morris explained, in substance, that he did not believe an actual conflict of interest existed or was likely to arise. Mr. Morris further explained that Mr. Wooten's involvement in Mr. Holmes's state case was very limited and that he did not believe Mr. Wooten learned any substantive information about the state case that would give rise to an actual conflict. Mr. Morris advised the undersigned it was his belief that, after discussing the issue of potential conflicts with his client, his client wanted to waive any potential conflict of interest and wished to consent to Mr. Wooten representing Kenyun Sr. in this case.

The undersigned advised Jesse Holmes of his right to object to Mr. Wooten's representation of Kenyun Sr. given his past representation of Mr. Holmes in the state case.  The undersigned provided examples of how Mr. Wooten's past representation of Holmes might result in a conflict of interest. Mr. Holmes was advised that

conflicts are difficult to predict and that there could be adverse consequences for him if he waives any potential conflict arising from Mr. Wooten's past representation.

After being advised of his rights and the risks of potential conflicts of interest, and the unpredictability of his situation, Jesse Holmes unequivocally stated his desire to waive any conflict and consent to Mr. Wooten's continued representation of Kenyun Sr. Before accepting Holmes's waiver, the undersigned offered Holmes the opportunity to consult privately with a conflict-free attorney who is otherwise uninvolved in this case. Mr. Holmes declined the offer to consult with a separate conflict-free attorney. The undersigned accepted Holmes's waiver of the potential for a conflict of interest.

### C. Kaylin Robinson

On June 10, 2020, the undersigned held a Conflict Inquiry Hearing regarding Mr. Wooten's representation of Kaylin Robinson while he is also representing Kenyun Sr. and having previously represented Jesse Holmes and Curtis Fairley. Kaylin Robinson was present with Mr. Wooten. AUSA Graviss represented the United States. The hearing was conducted in substantially the same manner as the June 3rd hearing with Kenyun Sr.

AUSA Graviss described the circumstances leading her to conclude that a potential conflict of interest exists due to Mr. Wooten formally representing Kaylin

Robinson while simultaneously representing Kenyun Sr. and having previously represented Jesse Holmes, Kenyun Jr., and Curtis Fairley in separate but related drug trafficking cases. Regarding Fairley, AUSA Graviss noted she believed an actual conflict existed because a witness placed Fairley and Kaylin Robinson together in a car in connection with a charged drug transaction.   Mr. Wooten disputed this assertion.  AUSA Graviss noted that although she believed there was a conflict, the United States was not taking a position as to whether the conflict was waivable and was not taking a position as to whether Mr. Wooten should be disqualified.

Mr. Wooten explained, in substance, that he did not believe an actual conflict of interest existed or was likely to arise.  Mr. Wooten advised the undersigned it was his belief that his client wanted to waive any potential conflict of interest and wanted to continue with his representation.

The undersigned also advised Kaylin Robinson of his right to have effective, conflict-free representation. The undersigned provided numerous examples of how Mr. Wooten's representation of Kaylin Robinson while also representing Kenyun Sr. might result in a conflict of interest. The undersigned also provided examples of how Mr. Wooten's past representation of Kenyun Jr., Jesse Holmes, and Curtis Fairley might result in a conflict of interest. Kaylin Robinson was advised that conflicts are difficult to predict and that there could be adverse consequences for him if he elects to proceed despite the potential for a conflict of interest. Kaylin

Robinson was also advised that, if an actual conflict arose, his attorney may be forced to withdraw from his representation. Kaylin Robinson was advised that he was free to seek advice from a conflict-free lawyer. Kaylin Robinson was advised that by waiving he would be precluded from later arguing that his attorney's representation was defective due to a conflict of interest.  Kaylin Robinson declined the opportunity to consult with conflict-free counsel.

After being advised of his rights and the risks of potential conflicts of interest, and the unpredictability of his situation, consistent with his written conflict waiver, Kaylin Robinson unequivocally stated his desire to waive any conflict and continue with the representation by Mr. Wooten. The undersigned accepted Kaylin Robinson's waiver of the potential for a conflict of interest.

### FACTUAL FINDINGS

1.      Although charged in separate cases, the conspiracy charge against Kenyun Sr. and Jesse Holmes in this case is relate to the charges brought against Kenyun Jr. in Robinson I, Curtis Fairley in *Slack,* and Kaylin Robinson in Robinson II.  The allegations in Robinson I, *Slack,* and Robinson II reflect a subset of the overall drug trafficking conspiracy charged in this case.

2.       Mr. Wooten's simultaneous representation of Kenyun Sr. and Kaylin Robinson reflects a "joint representation" situation.

3.      Although the connection between Jesse Holmes's state case and this

case is less clear, the conduct alleged in Jesse Holmes's state case is relevant to this case.

4.      Mr. Wooten's past representation of Jesse Holmes and current representation of Kenyun Sr. and Kaylin Robinson reflects a "successive representation" situation in which Mr. Wooten previously represented Jesse Holmes and now represents Kenyun Sr. and Kaylin Robinson.

5.      There is a potential for a conflict of interest associated with Mr. Wooten simultaneously representing both Kenyun Sr. and Kaylin Robinson. For example, there exists a potential for a conflict of interest should one defendant testify against the other in a future proceeding. The undersigned cannot say, however, that there currently exists an actual conflict of interest associated with Mr. Wooten's representation of both defendants. The defendants' lawyers of record—Mr. Wooten and Mr. Dailey—represented that they do not believe that a potential conflict is likely to ripen into an actual conflict.

6.      There is a potential conflict of interest associated with Mr. Wooten's current representation of Kenyun Sr. and past representation of Kenyun Jr., Curtis Fairley, and Jesse Holmes.  For example, there exists a potential for a conflict of interest if, in the future, privileged information Mr. Wooten acquired during his representation of Kenyun Jr., Curtis Fairley, or Jesse Holmes becomes relevant to cross examination or relevant to plea negotiations on behalf of Kenyun Sr.

7.     There is a potential conflict of interest associated with Mr. Wooten's current representation of Kaylin Robinson and past representation of Kenyun Jr., Curtis Fairley, and Jesse Holmes. For example, there exists a potential for a conflict of interest if, in the future, privileged information Mr. Wooten acquired during his representation of Kenyun Jr., Curtis Fairley, or Jesse Holmes becomes pertinent to issues addressed at a sentencing hearing for Kaylin Robinson.

8.     The undersigned cannot say, however, that there currently exists an actual conflict of interest associated with Mr. Wooten's past representation of Kenyun Jr., Curtis Fairley, and Jesse Holmes.  The defendants' lawyers of record—Mr. Wooten, Mr. Dailey and Mr. Morris—represented that they do not believe that a potential conflict is likely to ripen into an actual conflict.

9.     Kenyun Sr., Jesse Holmes and Kaylin Robinson are each competent to make a well-reasoned decision regarding the waiver of a conflict of interest.

10.     The United States has not requested that any attorney be disqualified and took no position as to whether any potential for a conflict of interest could be waived.

11.     Kenyun Sr., Jesse Holmes, and Kaylin Robinson are each aware of their right to effective assistance of counsel, including representation by counsel free of any conflict of interest, and that there exists a potential for a conflict of interest in this matter.

12.     Kenyun Sr., Jesse Holmes, and Kaylin Robinson are each aware that conflicts can be difficult to predict and that conflicts that may not be apparent today may arise later in the case.

13.     Kenyun Sr., Jesse Holmes, and Kaylin Robinson are each aware that, by waiving the potential for a conflict of interest, they may be precluded from raising that issue post-conviction.

14.     Kenyun Sr. made the decision to waive conflicts after having the benefit of consulting with conflict-free counsel.

15.     Jesse Holmes conferred with counsel or record, Raphael Morris, prior to making the decision to waive conflicts.

16.     Jesse Holmes and Kaylin Robinson declined the opportunity to consult with independent, court-appointed conflict-free counsel prior to making the decision to waive conflicts.

17.     Kenyun Sr. knowingly, voluntarily, and intelligently waived his right to object to any potential conflict of interest arising from Mr. Wooten's simultaneous representation of Kenyun Sr. and Kaylin Robinson.

18.     Kenyun Sr. knowingly, voluntarily, and intelligently waived his right to object to any potential conflict of interest arising from Mr. Wooten's past representation of Jesse Holmes and Kenyun Jr.

19.     Jesse Holmes knowingly, voluntarily and intelligently waived his

right to object to any potential conflict of interest arising from Mr. Wooten's ongoing representation of Kenyun Sr. notwithstanding Mr. Wooten's former representation of Mr. Holmes in a related state case.

20.     Kaylin Robinson knowingly, voluntarily and intelligently waived his right to object to any potential conflict of interest arising from Mr. Wooten's simultaneous representation of Kenyun Sr. and Kaylin Robinson.

21.     Kaylin Robinson knowingly, voluntarily, and intelligently waived his right to object to any potential conflict of interest arising from Mr. Wooten's past representation of Kenyun Jr., Curtis Fairley, and Jesse Holmes.

## LEGAL CONSIDERATIONS AND CONCLUSIONS

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.'" *Wheat v. United States*, 486 U.S. 153, 158 (1988).  As a general rule, "defendants are free to employ counsel of their choice and the courts are afforded little leeway in interfering with that choice."  *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006). However, this right of a criminal defendant to retain counsel of his choice is not absolute. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be

represented by the lawyer whom [she] prefers." *Wheat,* 486 U.S. at 159 (citing *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983)). Although a defendant is entitled to waive his right to conflict-free counsel, the court may disqualify a conflicted attorney despite a defendant's voluntary, knowing, and intelligent waiver if the court finds that allowing the representation to proceed would obstruct orderly judicial procedure or deprive the court of its inherent power to control the administration of justice. *See Edelmann*, 458 F.3d at 806, *see also Wheat,* 486 U.S. at 163 ("district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses).  Therefore, courts must balance the defendant's right to counsel of his own choosing against the court's interest in the administration of justice. *Edelmann*, 458 F.3d at 806.

In *Wheat*, the Court addressed a question similar to that presented in the present case—"the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." *Id*. at 159. In that case, the Court rejected the proposition that "waivers by all affected defendants [necessarily] cures any problems created by the multiple representation."

17

*Id.* at 160.  Rather, the Court affirmed a district court's discretion to reject or accept a waiver of a conflict of interest, based on the informed judgment of the court, after an evaluation of the facts and circumstances of a particular case. *Id.* at 164. The Court noted trial courts have a duty to inquire into potential conflicts of interests in the context of multiple representation[5] situations, and in so doing, "face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." *Id.* at 161. If a district court permits the representation to proceed, despite a potential conflict, and counsel's advocacy is impaired as a result, a defendant may claim she received ineffective assistance of counsel. *Id.* (citing *Burger v. Kemp*, 483 U.S. 776 (1987)). "On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge" to a defendant's right to counsel of her choice, under the Sixth Amendment. *Id.*  Therefore, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of a waiver...." *Id.* at 162.

In *Wheat*, the Court recognized that, in the pretrial context, the relationships between defendants "are seen through a glass, darkly" and the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.*  The Court further recognized, "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.

These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Id.* at 162-63.   Therefore, district courts are given "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or not burgeon into an actual conflict as the trial progresses." *Id.* at 163.

In this case, Kaylin Robinson has already entered a guilty plea and is awaiting sentencing in Robinson II. Although Robinson II is no longer in the pretrial context, it involves conduct (along with other terminated cases) that is a subset of the larger conspiracy charged in this case.  The conspiracy case is still in a very early pretrial stage. Thus, "there is of necessity less certainty as to whether conflicts will actually arise and as to the nature of those conflicts." *United States v. Agosto*, 675 F.2d 965, 970 (8th Cir. 1982); *see also United States v. Johnson*, 131 F. Supp.2d 1088, 1094 (N.D. Iowa 2001) (quoting same). "Consequently, '[b]ecause the task of assessing the potential for conflict well in advance of trial is such a difficult one, the standards applicable to making that assessment must be flexible.'" *Johnson*, 131 F. Supp.2d at 194 (citing *Agosto*, 675 F.2d at 970).

In *Agosto*, the Eighth Circuit identified potential sources of conflicts of interest that can arise in a successive representation scenario like the circumstances

presented in this case.  Specifically, the Eighth Circuit recognized that "privileged information obtained from the former client might be relevant to cross-examination, thus affecting advocacy in one of two ways: (a) the attorney may be tempted to use that confidential information to impeach the former client; or (b) counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." *Agosto*, 675 F.3d at 971.  The Eighth Circuit further recognized a second major source of a possible conflict in a successive representation case that that "the attorney's pecuniary interest in possible future business may cause him to make trial decisions with a view toward avoiding prejudice to the client he formally represented." *Id.*

The undersigned acknowledges that, given Mr. Wooten's past and ongoing representation in related cases of no less than five members of the conspiracy charged in this case, the risk that he may have acquired privileged information that may prove relevant to cross examination or pertinent at a sentencing hearing is quite high.  This risk is somewhat tempered by the fact that Mr. Dailey is also co-counsel of record for Kenyun Sr. and has no known connection to any of the other members of the conspiracy.  However, Mr. Dailey's presence as co-counsel by no means eliminates the risk that an actual (and possibly non-waivable) conflict may arise in the future. However, defense counsel's representations at the conflict hearings coupled with each defendant's knowing and voluntary conflict waivers tilt the

conflict inquiry in favor of allowing representation by Mr. Wooten to proceed.

Indeed, "[i]n determining whether a conflict of interest exists, substantial weight is given to defense counsel's representations." *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996) (citing *Agosto*, 675 F.3d at 972); *see also Johnson*, 131 F. Supp.2d at 1095 (quoting same). In this case, all defense counsel of record (Messrs. Wooten, Dailey and Morris) represented to the Court that they did not believe any actual conflict of interest exists, and that an actual conflict of interest is unlikely to arise. Furthermore, although the undersigned finds that a potential for a conflict of interests exists, the undersigned cannot say there is currently an actual conflict of interest.

Finally, the undersigned found Kenyun Sr., Jesse Holmes, and Kaylin Robinson were each competent and capable of voluntarily and intelligently waiving any potential conflict of interest.  "If, after inquiry into the existence of an actual or potential conflict of interest, the court finds that 'the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney.'" *Johnson*, 131 F. Supp.2d at 1102 (quoting *United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998)). In view of the currently known facts and circumstances, including the record made at the hearings on June 3 and 10, 2020, the undersigned finds that the waivers of a conflict of interest by Kenyun Sr., Jesse Holmes, and Kaylin Robinson were knowing, voluntary, and intelligently made. The undersigned cannot say that the

potential conflict of interest in these cases is so severe that no rational defendant would waive it. The undersigned's decision is influenced significantly by the fact that Kenyun Sr. and Jesse Holmes received the benefit of counsel from independent and conflict-free attorney and by the fact that after being advised of the potential problems that could arise, all three defendants persisted in their respective desire to consent to the joint representation by Mr. Wooten.

Accordingly,

**IT IS HEREBY ORDERED** that, for the reasons stated in this Memorandum and Order, Defendant Kenyun Robinson has knowingly and voluntarily waived any conflict of interest arising from Jermaine Wooten's joint representation of Defendant Kenyun Robinson in this case and Kaylin Robinson in *United States v. Kaylin Robinson*, Case No. 4:19CR329 RLW.

**IT IS FURTHER ORDERED** that, for the reasons stated in this Memorandum and Order, Defendant Kenyun Robinson has knowingly and voluntarily waived any conflict of interest arising from Jermaine Wooten's past representation of Kenyun Robinson in *United States v. Kenyun Robinson*, Case No. 4:19CR427 CDP; and Jermaine Wooten's past representation of Jesse Holmes in *State of Missouri v. Jesse Holmes*, Case No. 1922-CR03501.

**IT IS FURTHER ORDERED** that, for the reasons stated in this Memorandum and Order, Defendant Jesse Holmes has knowingly and voluntarily

22

waived any conflict of interest arising from Jermaine Wooten's representation of

Defendant Kenyun Robinson in this case.

Dated: June 16, 2020

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE